IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN BREEDLOVE;
DELORES BREEDLOVE                                        PLAINTIFFS


                v.        Civil No. 08-2018


CITY OF COAL HILL;
DAVID PILKINGTON, Individually
and in his Official Capacity
as Police Chief of the City of Coal Hill          DEFENDANTS


                        O R D E R

    NOW on this the 21st day of January 2009, comes on for
consideration Defendants' **Motion for Summary Judgment** (document
#20), Plaintiffs' response thereto (document #27), and
Defendants' reply (document #32).  The Court, having reviewed the
pleadings of the parties, and all other matters of relevance
before it, and being well and sufficiently advised, finds and
orders as follows:

    1.  On March 5, 2008, Plaintiffs John Breedlove and Delores
Breedlove (hereinafter "Plaintiffs," "John Breedlove," or
"Delores Breedlove," as appropriate) commenced this action
against Defendants City of Coal Hill and David Pilkington,
individually and in his official capacity as Police Chief of the

                        -1-

City of Coal Hill, (hereinafter "Defendants," "City of Coal Hill," or "Chief Pilkington," as appropriate) seeking relief for Defendants' alleged violations of Plaintiffs' First Amendment and Fifth Amendment due process rights, and setting forth claims of defamation and malicious prosecution. Further, on April 29, 2008, Plaintiffs amended their complaint to add claims of retaliation in violation of 42 U.S.C. § 1983 and battery.

Specifically, Plaintiffs allege in their complaint that in September 2007, they attended a planning and zoning meeting at the Coal Hill City Hall for the purpose of advocating a position different than that supported by the Defendants. Plaintiffs say that Defendants conspired to remove them from the meeting, thereby preventing them from voicing their adverse opinions. According to the complaint, Chief Pilkington arrested John Breedlove for public intoxication without probable cause in order to prevent his participation in the meeting. Further, Plaintiffs say that after filing this lawsuit Chief Pilkington stopped Delores Breedlove in her vehicle and subjected her to harassing and threatening behavior in retaliation for the claims brought against him in this lawsuit.

Defendants now move for summary judgment. Plaintiffs have responded in opposition to this motion.

2.   The standard to be applied to a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure and provides for the entry of summary judgment on a claim if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Carroll v. Pfeffer, 262 F.3d 847 (8th Cir. 2001); Barge v. Anheuser-Busch, Inc., 87 F.3d 256 (8th Cir. 1996).  Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Accordingly, all evidence must be viewed in the light "most favorable to the non-moving party." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997); see also Bailey v. United States Postal Service, 208 F.3d 652, 654 (8th Cir. 2000). Where a movant makes and properly supports a motion for summary judgment, the opposing party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 256.  The non-moving party must "make

a sufficient showing on every essential element of its case for which it has the burden of proof at trial." <u>Wilson v. Southwestern Bell Tel. Co.</u>, 55 F.3d 399, 405 (8th Cir. 1995).

3. From the statements of facts submitted by the parties, the following material, undisputed facts appear:

* The City of Coal Hill is a City of Second Class under Arkansas law. <u>See</u> Ark. Code Ann. § 14-37-103(2).

* Plaintiffs live on Highway 64, a short distance from City Hall, which is also located on Highway 64 -- a main thoroughfare through the City of Coal Hill.

* David Pilkington was the Chief of Police for the City of Coal Hill at all times relevant to the allegations set forth in this lawsuit.

* On September 11, 2007, Plaintiffs attended the City of Coal Hill Planning and Zoning Commission meeting (hereinafter the "Commission meeting"), arriving at approximately 6:50 p.m.

* Plaintiffs did not ask to be placed on the agenda for the Commission meeting.

* Prior to the September 11, 2007 Commission meeting, Plaintiffs have asked to be placed on the City Council agendas numerous times and were never denied that ability. In the past, Plaintiffs have spoken at City Council meetings.

-4-

* Chief Pilkington was on duty at the Commission meeting.

* John Breedlove consumed alcohol sometime before arriving at the Commission meeting.

* Chief Pilkington and Stacy Cox smelled the odor of alcohol from John Breedlove at the Commission meeting.

* Chief Pilkington left the Commission meeting, went to his patrol car, and obtained his portable breath tester ("PBT").  He then returned to the meeting, stood in the doorway outside the meeting room in order to observe John Breedlove.

* Chief Pilkington observed what he believed to be John Breedlove attempting to cross his legs and miss, and believed that he was swaying in his seat.

* Chief Pilkington then reentered the meeting room and asked John Breedlove if he had been consuming alcohol, to which John Breedlove replied "yes."

* Chief Pilkington then asked John Breedlove to step outside the Commission meeting and take a breath test -- to which John Breedlove agreed.

* At this time, only Chief Pilkington and John Breedlove were in the hallway.

* John Breedlove's PBT resulted in a .092.

* Chief Pilkington observed John Breedlove swaying in the hallway at the time he administered the PBT.

* Chief Pilkington placed John Breedlove under arrest for public intoxication.

* The incident report prepared by Chief Pilkington states that, "due to [Mr. Breedlove's] health and the way he swayed when standing" Chief Pilkington decided to arrest John Breedlove in order to prevent him from being a danger to himself.

* Delores Breedlove then came out of the meeting to give Chief Pilkington John Breedlove's medications.

* Delores Breedlove was not told to leave the Commission meeting, nor was she prohibited from placing her name on the meeting agenda.

* At times following the September 11, 2007 Commission meeting, Plaintiffs were placed, at their request, on the City Council agenda and permitted to speak on such occasions.

* John Breedlove suffers from a herniated disk in his neck and lower back, and degenerative problems with his right knee -- making it hard for him to sit for long periods of time, cross his legs, or walk. Chief Pilkington was generally aware of John Breedlove's health problems.

* John Breedlove was diagnosed with unstable angina in 2002. He has been taking nitroglycerine pills since that time.

* John Breedlove requested and was given two nitroglycerine pills while in custody in the Johnson County jail.  These pills provided John Breedlove with relief and he was not denied any medical treatment by Defendants.

* On November 9, 2007, John Breedlove visited a physician for a "cardiac incident" which occurred while under arrest.

* On November 29, 2007, John Breedlove was tried in absentia for public intoxication and found guilty by an Arkansas district judge, and was sentenced to pay a $150.00 fine.

* John Breedlove's conviction was later set aside because of an alleged lack of notice of the first trial.  That is, his first trial date was changed without his knowledge.  At the second trial, John Breedlove was found not guilty.

* On March 13, 2008, Plaintiffs were pulled over by Chief Pilkington for impeding the flow of traffic.  Delores Breedlove, who was driving, was cited for traveling on a state highway at 16 miles per hour in a 40 mile per hour zone.

* Delores Breedlove later complained to her physician that Chief Pilkington "pulled and twisted" her arm during the course of the traffic stop.

4. Proceeding under the summary judgment standard stated herein, the Court will now address the various claims set forth by Plaintiffs.

5. ***First Amendment Claims*** -- As previously stated, Plaintiffs contend that they were deprived of their First Amendment right to speak at the Commission meeting.

(a) The Court will first consider Plaintiffs' First Amendment claims against the City of Coal Hill and Chief Pilkington in his official capacity.

It is axiomatic that a suit against a governmental employee in his official capacity is "treated as a suit against the municipality he serves." Dornheim v. Sholes, 430 F.3d 919, 926 (8th Cir. 2005). Accordingly, the claim against Chief Pilkington in his official capacity and the City of Coal Hill are, in essence, one claim against the municipality.

Proceeding thus, the Court notes that it is well established that a municipality cannot be held vicariously liable under 42 U.S.C. § 1983 for its employees' unconstitutional acts. Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978); Wedemeier v. City of Ballwin, Mo., 931 F.2d 24, 26 (8th Cir. 1991). However, when a municipal policy or custom is the moving force behind a constitutional

violation, municipal liability attaches. <u>Monell</u>, 436 U.S. at 694; <u>Wedemeier</u>, 931 F.2d at 26.   That is, liability may be imposed where the challenged conduct executes or implements a formally adopted policy, or where the conduct reflects practices of government officials "so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>Monell</u>, 436 U.S. at 691 (quoting <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613 (1970)); <u>Springdale Educ. Ass'n v. Springdale School Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998).

At the outset, the Court must determine whether a constitutional violation occurred at the hands of Chief Pilkington for which the City of Coal Hill may be liable.  <u>See City of Los Angeles v. Heller</u>, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573 (1986).  Plaintiffs claim that their First Amendment right to free speech was violated because John Breedlove was removed from the Commission meeting and arrested by Chief Pilkington as part of a conspiracy to keep both him and his wife, Delores Breedlove, from addressing the Commission.

In Defendants' motion for summary judgment, they argue that, assuming *arguendo* Plaintiffs had a First Amendment right to speak at the Commission meeting, there is no evidence that Defendants knew that Plaintiffs intended to speak or had knowledge of the

topic of their proposed speech. Moreover, Defendants contend that there is no evidence of any motivation on the part of Defendants to prevent Plaintiffs from speaking at the Commission meeting. The Court agrees.

From the undisputed facts of this case, it appears that Plaintiffs did not request to be placed on the Commission meeting agenda –- a necessary step in being allowed to speak at such meetings. Plaintiffs have offered no evidence to show that, despite not being placed on the meeting agenda or gaining the requisite authorization to address the Commission, they were engaged in conduct protected under the First Amendment. See Minnesota State Bd. of Comm. Colleges v. Knight, 465 U.S. 271, 283, 104 S.Ct. 1058, 1065 (1984) ("The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy"). Moreover, no evidence has been offered to show that Defendants knew that Plaintiffs intended to speak or the content of what Plaintiffs may have discussed. Further, Plaintiffs have offered no evidence to show that Plaintiffs' alleged, proposed speech was in any way a motivating factor in the arrest of John Breedlove. To the contrary, the undisputed facts demonstrate that John Breedlove was publicly intoxicated and was arrested for that reason.

-10-

Finally, as to Delores Breedlove, Plaintiffs have given no reason why the arrest of her husband would prevent her from being placed on the meeting agenda and speaking. Delores Breedlove was neither arrested nor removed from the Commission meeting. Thus, it is unclear on what Plaintiffs base their First Amendment claim as to Delores Breedlove.

Because the Court finds no evidence of a First Amendment constitutional violation or injury in this case, there is no need to proceed to the next step of the analysis -- that is, whether any constitutional injury was the result of an official policy or widespread custom of the City of Coal Hill. Accordingly, the Court finds that summary judgment should be granted as to Plaintiffs' First Amendment claims against the City of Coal Hill and Chief Pilkington in his official capacity.

(b) Turning to Plaintiffs' First Amendment claim against Chief Pilkington in his individual capacity, Defendants argue that there is no First Amendment injury upon which to base this claim and Chief Pilkington is entitled to qualified immunity.

Law enforcement officers are shielded from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); <u>Sanders v. City of
Minneapolis, Minnesota</u>, 474 F.3d 523, 526 (8th Cir. 2007).   In
addressing an officer's claimed entitlement to qualified
immunity, the Court must first determine whether the allegations
amount to a constitutional violation and then whether the
aggrieved right was clearly established. <u>Sanders</u>, 474 F.3d at
526.   Accordingly, the Court again turns to the issue of whether
there was an underlying First Amendment violation in this case.

As previously stated, viewing the evidence in the light most
favorable to Plaintiffs, the Court perceives no evidence to
support the conclusion that a First Amendment violation occurred
at the hands of Chief Pilkington.

The Court's conclusion is furthered supported by the fact
that, in Plaintiffs' response to Defendants' pending motion, they
offer no argument or evidence to counter Defendants' argument for
summary judgment on the First Amendment claims.   Thus, it appears
that Plaintiffs have conceded this claim and, indeed, the
evidence presented supports this concession.   Without an
underlying First Amendment violation, the qualified immunity
analysis ends and the Court must rule in favor of Defendants.
The Court, therefore, finds that Defendants' motion for summary

judgment should be granted as to Plaintiffs' First Amendment claims against Chief Pilkington in his individual capacity.

6.  ***Due Process Claims*** -- The Court will now address Plaintiffs' due process claim. The crux of Plaintiffs' claim is that, while acting in his capacity as Coal Hill police officer, Chief Pilkington arrested John Breedlove without probable cause in violation of his Fifth Amendment due process rights.[1]

Moreover, in the original complaint Plaintiffs alleged that, following the arrest of John Breedlove, Defendants caused the date of his trial to be changed without notice to Plaintiff so that he was found guilty of public intoxication on December 4, 2007. After the state court was made aware of John Breedlove's lack of notice, he was retried and found not guilty on December 27, 2007. It now appears that these claims have been abandoned by Plaintiffs, as they offer no evidence or argument in response

---

[1]    In the complaint, Plaintiffs raise their due process claims under the Fifth Amendment. However, as noted by Defendants in their motion for summary judgment, because Defendants are municipal actors these due process claims should have been raised under the Fourteenth Amendment. Plaintiffs recognize as much in their response brief and request that their complaint be amended accordingly. Because Defendants clearly recognized that Plaintiffs' due process claims were proper under the Fourteenth Amendment and were not prejudiced by Plaintiffs' error – in that Defendants were able to fully brief the issues – the Court will proceed with its analysis of Plaintiffs' due process claims under the Fourteenth Amendment.

to Defendants' motion for summary judgment as to these allegations. Thus, the Court will address only Plaintiffs' due process claims regarding the warrantless arrest of John Breedlove.

(a)  The Court will first consider Plaintiffs' due process claims against the City of Coal Hill and Chief Pilkington in his official capacity.

As previously stated, a suit against a governmental employee in his official capacity is "treated as a suit against the municipality he serves." Dornheim, 430 F.3d at 926.  Further, a local government cannot be held liable under Section 1983 for injuries inflicted solely by its employees or agents on a theory of respondeat superior. Springdale, 133 F.3d at 651.  Rather, a plaintiff seeking to impose such liability is required to identify either an official municipal policy or widespread custom or practice that caused his injury. Id.

In the instant case, Plaintiffs have not alleged that an existing policy or custom of the City of Coal Hill was the moving force behind the alleged due process violations.  Rather, Plaintiffs attempt to attribute the actions of Chief Pilkington, in arresting John Breedlove, to the City of Coal Hill by asserting that Chief Pilkington was acting as an authorized

-14-

policymaker of the City at the time of the arrest. Thus, Plaintiffs contend that the actions taken by Chief Pilkington alone amount to official city policy.

The Court recognizes that an unconstitutional government policy may be inferred from a single decision or act taken by the highest officials responsible for setting policy in a particular area of a government's business. City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 924 (1988); Davidson v. City of Minneapolis, 490 F.3d 648, 659 (8th Cir. 2007). In such cases, the critical inquiry is whether the litigated act came from one in an authoritative policy-making position and represents the official policy of the municipality. Springdale, 133 F.3d at 652; McGautha v. Jackson County Mo. Collections Dept., 36 F.3d 53, 56 (8th Cir. 1994). Whether a person is an authorized policymaker for purposes of assigning municipal liability is a question of state law. Springdale, 133 F.3d at 652.

According to Arkansas law, the City of Coal Hill -- having some 1,000 inhabitants -- is a "City of the Second Class." See Ark. Code Ann. § 14-37-103(2) ("All cities having five hundred (500) inhabitants or more and fewer than two thousand five hundred (2,500) inhabitants shall be deemed cities of the second

class"). Regarding cities of the first and second class,
Arkansas Code § 14-52-101 states, in relevant part, that,

> The *city council* shall have power to establish a city
> police department, to organize it under the general
> superintendence of the mayor, and to prescribe its
> duties and define its powers in such manner as will
> most effectually preserve the peace of the city ...

Ark. Code Ann. § 14-52-101 (emphasis added).

In light of the foregoing, it is evident that under Arkansas
law, Chief Pilkington did not have the requisite authority to
establish police department policy through his acts. Further,
Plaintiffs do not claim that the city council relinquished or
delegated its policy-making authority to Chief Pilkington.
Rather, Plaintiffs argue that the actions of Chief Pilkington in
arresting John Breedlove occurred before city council members
such that his actions were approved by the council.

The undisputed facts of this case establish that the blood
alcohol test and arrest of John Breedlove occurred outside of the
Commission meeting in the hallway. Thus, the Court does not find
Plaintiffs' argument to be persuasive. The Court, therefore,
finds that, as a matter of law, Chief Pilkington lacked the
requisite authority to set policy with respect to arresting
citizens without a warrant or, as Plaintiffs' allege, without
probable cause.

-16-

In sum, the Court finds that, viewing the evidence in the light most favorable to Plaintiffs, they have failed to come forward with facts to support their claim that Chief Pilkington acted pursuant to official city policy with the force of law. Accordingly, the Court finds that Defendants' motion for summary judgment should be granted as to Plaintiffs' due process claims against the City of Coal Hill and Chief Pilkington in his official capacity.

(b)   The Court now turns to Plaintiffs' due process claim against Chief Pilkington in his individual capacity and notes Defendants' argument that qualified immunity should protect Chief Pilkington from this claim.

As previously stated, qualified immunity shields government officials and officers performing discretionary functions from liability unless their conduct "violates clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818.

In suits alleging illegal arrest, the qualified immunity determination turns on whether a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed. Hunter v. Bryant,

502 U.S. 224, 227, 112 S.Ct. 534, 536 (1991).  In addressing the issue of probable cause, the Eighth Circuit has stated that,

> [i]n determining whether probable cause exists to make a warrantless arrest, a court will consider whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense.  Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances ... in light of his training and experience. 'The probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'

Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986) (quoting Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590-91 (1969)).  Further, the issue for qualified immunity purposes, is not probable cause in fact, but rather "arguable" probable cause. Gorra v. Hanson, 880 F.2d 95, 97 (8th Cir. 1989).  Even law enforcement officers who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity. Hunter, 502 U.S. at 227.

Under Arkansas law, one commits the offense of public intoxication if he appears in a public place manifestly under the influence of alcohol or a controlled substance to the degree and under circumstances such that: (1) the person is likely to endanger himself or another person or property; or (2) the person

unreasonably annoys a person in his vicinity. Ark. Code Ann. § 5-71-212.   In arresting John Breedlove for public intoxication without a warrant, Chief Pilkington was aware of the following, undisputed facts relating to the condition of John Breedlove:

    * he was in a public place;

    * he admitted that he had been drinking;

    * he registered a PBT of .092;[2]

    * he smelled of alcohol;

    * he had trouble sitting and crossing his legs; and

    * he was observed by Chief Pilkington swaying in the hallway.

These factors, coupled with John Breedlove's health problems -- of which Chief Pilkington was aware and noted in his incident report -- could lead a reasonable officer to conclude that John Breelove presented a danger to himself and potentially others, should he drive.   Thus, these factors would, in the Court's view, provide arguable probable cause for Chief Pilkington to arrest John Breedlove for public intoxication.

_____

    [2] The Court observes that under Arkansas DWI law, a person is subject to conviction for driving while "intoxicated" when their blood alcohol concentration is .08 or greater.   <u>See</u> Ark. Code Ann. § 5-65-103.

Although Plaintiffs have come forward with statements from Stacy Cox and Ronnie Garner -- who expressed their views that John Breedlove was not acting in a threatening or annoying manner -- the Court does not believe these statements trump or nullify the factors which appeared to Chief Pilkington and formed the basis for the actions he took.

Accordingly, the Court concludes that Chief Pilkington is entitled to qualified immunity and, as a result, summary judgment should be granted as to Plaintiffs' due process claims against Chief Pilkington in his individual capacity.

7. ***Retaliation Claim*** -- Plaintiffs say that on March 13, 2008, within two weeks of being served with the original complaint in this lawsuit, Chief Pilkington stopped Delores Breedlove in her vehicle for "impeding the flow of traffic." Plaintiffs say that the reasons given by Chief Pilkington were false and pretextual and that, in fact, Delores Breedlove was stopped as an act of retaliation for filing this lawsuit.

To establish the elements of their retaliation claim under 42 U.S.C. § 1983, Plaintiffs must show that they were engaged in constitutionally protected activity, that Chief Pilkington's adverse action caused them to suffer an injury which would chill a person of ordinary firmness from continuing in that activity,

and that the adverse action was motivated in part by Plaintiffs'
exercise of their constitutional rights. Carroll v. Pfeffer, 262
F.3d 847, 850 (8th Cir. 2001).

(a) The Court will first address the third element of the
test set forth above.

According to Chief Pilkington and the evidence presented,
Delores Breedlove was pulled over for impeding the flow of
traffic -- more specifically, driving 16 miles-per-hour in a 40
mile-per-hour zone. See Ark. Code Ann. § 27-51-208.

According to Delores Breedlove, Chief Pilkington also stated
that she was pulled over for having expired tags and because
Plaintiffs were allegedly "stalking" him.

Plaintiffs have pointed to no evidence which would show that
the actions of Chief Pilkington in stopping Delores Breedlove
were motivated by anything other than the above-stated reasons.
At best, they offer only speculation that Chief Pilkington's
"adverse actions" were really motivated by the exercise of their
constitutional rights in filing this lawsuit.  Such speculation
will not, however, suffice to save Plaintiffs' retaliation claim
from summary judgment.

Thus, viewing the evidence in the light most favorable to
Plaintiffs, the Court concludes that Plaintiffs have failed to

show that Chief Pilkington's conduct was motivated in *any* part by the filing of the instant lawsuit.

(b) In light of the foregoing, the Court deems it unnecessary to address the other elements of the test mentioned and, accordingly, concludes that summary judgment should be granted as to the retaliation claim.

8. ***State Law Claims – Malicious Prosecution, Defamation, and Battery***

Regarding Plaintiffs' various state law claims, the Court concludes that, because the herein discussed federal claims are subject to summary judgment, it will decline to exercise supplemental jurisdiction in this matter. 28 U.S.C. § 1367(c)(3) (a court may "decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction"); <u>see also</u> <u>In re Canadian Import Antitrust Litigation</u>, 470 F.3d 785, 792 (8th Cir. 2006) ("When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually will point toward declining to exercise jurisdiction over the remaining state law claims"). The Court finds that Plaintiffs' supplemental state law claims should be dismissed without prejudice accordingly.

**IT IS, THEREFORE, ORDERED** that the **Motion for Summary Judgment** (document #20) of Defendants City of Coal Hill and David Pilkington should be, and it hereby is, **GRANTED** in its entirety and judgment in favor of Defendants will be entered by separate document filed concurrently herewith.

**IT IS SO ORDERED.**

**/s/ Jimm Larry Hendren**
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**